COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Athey and Callins

SHAUN LEE CALDWELL

MEMORANDUM OPINION*
v.       Record No. 0898-21-1                    PER CURIAM
                                                 AUGUST 30, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

(W. McMillan Powers, Assistant Public Defender, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Victoria Johnson, Assistant
Attorney General, on brief), for appellee.


Shaun Lee Caldwell appeals from the judgment of the Circuit Court of the City of

Portsmouth ("trial court") revoking his previously suspended sentences. Caldwell contends that

the trial court abused its discretion by revoking his previously suspended sentences and imposing

an active term of one year of incarceration conditioned upon his successful completion of two

years' supervised probation. After examining the briefs and record, the panel unanimously holds

that oral argument is unnecessary because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a). We affirm the decision of the trial court.

I. BACKGROUND

In 2018, the trial court convicted Caldwell of attempted statutory burglary and possession

of a Schedule I or II controlled substance under a written plea agreement. Consistent with the

plea agreement, the trial court sentenced Caldwell to concurrent three-year sentences for each

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

charge, with one year and nine months suspended. The trial court conditioned the suspended sentences on Caldwell's successful completion of two years' supervised probation. Caldwell's suspended sentences were revoked, and resuspended in part, in 2019. Caldwell returned to supervised probation in October 2019.

In June 2021, Caldwell's probation officer reported that Caldwell had violated the terms and conditions of his previously suspended sentences because he had failed to report for two scheduled appointments and had absconded from supervision. The trial court issued a capias on June 10, 2021, which was served on Caldwell that same day. By addendum filed in July 2021, Caldwell's probation officer reported that Caldwell also had incurred new convictions and had additional pending charges.

At the revocation hearing, Caldwell's probation officer, Willie Scott, testified that Caldwell began supervised probation on October 15, 2019. Scott confirmed that Caldwell had an earlier probation violation in 2019. Scott assumed supervising Caldwell in April 2020, and on June 30, 2020, Caldwell signed his conditions of probation, indicating that he understood what was expected of him. Caldwell struggled with drug addiction, and Scott directed him to enter a substance abuse treatment program. Scott testified that Caldwell was "doing great" when he entered substance abuse treatment.

In March 2021, however, Caldwell failed to report to his scheduled probation meetings. Scott attempted to contact Caldwell at the telephone number Caldwell had provided, but it was "no longer in service." Scott contacted Caldwell's mother, who informed Scott that Caldwell no longer lived with her because she believed Caldwell was using drugs again. Scott mailed a letter to Caldwell instructing him to report to probation; Caldwell failed to do so. Finally, Scott contacted Caldwell's place of employment, but the manager informed Scott that Caldwell was no longer employed there. The last contact Scott had with Caldwell was on December 29, 2020.

In addition to absconding from supervision, Caldwell had received new convictions for unauthorized possession of drug paraphernalia and contempt of court for failure to appear. Caldwell also had incurred new charges for obtaining money by false pretenses, computer fraud to obtain services, and entering or setting in motion a vehicle. The Commonwealth proffered certified copies of the conviction orders for the paraphernalia and failure to appear convictions.

Caldwell testified that he had lived with his mother for eight years but she "got tired of" him, so he moved out of the residence. He stayed with his brother for thirty days, but after that he was homeless. Caldwell admitted that he did not report to his probation officer in March, acknowledging that his "priorities were not in order" because he was trying to obtain shelter.

In February 2020, Caldwell lost his identification and health insurance cards and could not continue substance abuse treatment without them. He was working to obtain replacement cards when he was incarcerated. Caldwell testified that it did not "cross [his] mind" to seek his probation officer's help to obtain replacement cards. Caldwell acknowledged that he did not report for his March appointment with Scott but stated he was focused on securing a place to stay at the time. He confirmed that he now understood he needed to report and comply with probation. In addition to obtaining his replacement cards, Caldwell also planned to complete substance abuse treatment upon his release from incarceration.

The Commonwealth argued that Caldwell "clearly [had] absconded" from court-ordered supervision. Recognizing that Caldwell initially complied with probation and received the substance abuse treatment that was offered to him, however, the Commonwealth submitted the question of a proper sentence to the trial court.

Caldwell argued that he initially did well on probation but "hit a rough patch" because he was homeless and had lost his identification and medical cards, which hindered his ability to continue substance abuse treatment. Caldwell asserted that he had been "open and honest" when

he provided an explanation for his failures while on probation. Caldwell now understood what he needed to do upon his release from incarceration. He asked the trial court to deviate below the "excessive" sentencing guideline recommendation.[1]

The trial court found that Caldwell had violated the terms and conditions of his previously suspended sentences and revoked Caldwell's previously suspended sentences. The trial court resuspended all but one year. Caldwell appealed.

## II. ANALYSIS

Caldwell contends that the trial court abused its discretion when it imposed an active one-year sentence. He argues that the trial court failed to consider his mitigating evidence and, instead, imposed a sentence that was "more than what was necessary" to punish him. The record does not support Caldwell's argument.

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Moreover, under the revocation statute in effect when this revocation proceeding began, once the trial court found that Caldwell had violated the terms of the suspension, it was obligated to revoke the suspended sentences and they were in "full force and effect." Code § 19.2-306(C)(ii) (Cum. Supp. 2020).[2] The trial court was

---

[1] The discretionary sentencing revocation report recommended a sentencing range of one year incarceration to one year and six months' incarceration.

[2] Although Code § 19.2-306(C) was amended effective July 1, 2021, Caldwell does not argue that the statutory amendment applied in his case and this Court recently held that it did not apply when, as here, the probation violations occurred before the effective date of the amendment. *See Green v. Commonwealth*, 74 Va. App. 69, 84 & n.4 (2022). Moreover, even under the new statutory framework, the trial court has discretion to impose the balance of a previously suspended sentence when a probationer commits a new offense during the suspension period. *See* 2021 Va. Acts Sp. Sess. I, ch. 538; Code § 19.2-306.1(B).

permitted—but not required—to resuspend all or part of the sentence. *Id.*; *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002).

The record establishes that the trial court had sufficient cause to revoke Caldwell's suspended sentences. Indeed, Caldwell challenges only the sentence the trial court imposed, arguing that the trial court failed to afford sufficient weight to his mitigating evidence. He emphasizes that he was homeless and "without the proper focus" to obtain "the identification information he needed to gain services that could assist him." Caldwell also stresses that he had been "doing great" on probation and cooperating with his substance abuse treatment until he became homeless and failed to report to his scheduled probation meetings. Caldwell asserts that the trial court erred when it imposed an active sentence because he was now able to "focus on the importance of getting his identification cards and a stable residence." We disagree.

It was within the trial court's purview to weigh any mitigating factors Caldwell presented, including his homelessness, lost documentation, and expressed desire to continue substance abuse treatment. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). The evidence also demonstrated, however, that Caldwell suffered new convictions during the suspension period and had failed to cooperate with probation.

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). Caldwell's disregard of the terms of his suspended sentences supports a finding that he was not amenable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v.*

*Commonwealth*, 51 Va. App. 443, 448 (2008)).  Caldwell's lapse into further criminal behavior demonstrated that he failed to take advantage of the grace extended to him.

### III.  CONCLUSION

Having reviewed the record, we hold that the sentence the trial court imposed represents a proper exercise of discretion.  Accordingly, we affirm the trial court's judgment.

*Affirmed*.